1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES F. TUTTLE,

11            Plaintiff,                   No. CIV S-07-1487 GGH

12      vs.

13
     MICHAEL J. ASTRUE,                    ORDER
14   Commissioner of
     Social Security,
15
              Defendant.
16   _____/

17           Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB")

19   and Supplemental Security Income ("SSI") under Titles II and XVI respectively of the Social

20   Security Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment is

21   GRANTED IN PART, the Commissioner's Cross Motion for Summary Judgment is DENIED,

22   and this matter is remanded to the ALJ for further findings as directed in this opinion.  The Clerk

23   is directed to enter judgment for plaintiff.

24   \\\\\

25   \\\\\

26   \\\\\

                                                  1

1    BACKGROUND

2              Plaintiff, born June 14, 1962, applied on April 21, 2005 for disability benefits.[1]

3    (Tr. at 45, 225.)  Plaintiff alleged he was unable to work due to back injury, face injury,

4    headaches and dizzy spells.  (Tr. at 51.)

5              In a decision dated February 23, 2007, ALJ Laura Speck Havens determined

6    plaintiff was not disabled.  The ALJ made the following findings:[2]

7         1.    The claimant met the special insured status requirements
              for a period of disability and disability insurance benefits
8             on November 1, 2000, his alleged disability onset date and
              will continue to meet those requirements through
9             September 30, 2006, his date last insured.

10   _____

11        [1] Plaintiff had previously received a closed period of benefits, from 1999 to 2001, for a
     period following back surgery.  (Tr. at 232.)
12
          [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
13   Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
     disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
14   part, as an "inability to engage in any substantial gainful activity" due to "a medically
     determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
15   A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
     See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
16   137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
              Step one:  Is the claimant engaging in substantial gainful
17   activity?  If so, the claimant is found not disabled.  If not, proceed
     to step two.
18            Step two:  Does the claimant have a "severe" impairment?
     If so, proceed to step three.  If not, then a finding of not disabled is
19   appropriate.
              Step three:  Does the claimant's impairment or combination
20   of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
     404, Subpt. P, App.1?  If so, the claimant is automatically
21   determined disabled.  If not, proceed to step four.
              Step four:  Is the claimant capable of performing his past
22   work?  If so, the claimant is not disabled.  If not, proceed to step
     five.
23            Step five:  Does the claimant have the residual functional
     capacity to perform any other work?  If so, the claimant is not
24   disabled.  If not, the claimant is disabled.
     Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
25        The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26   burden if the sequential evaluation process proceeds to step five.  Id.

2.    The claimant has not performed substantial gainful activity from November 1, 2000, his alleged disability onset date, through the date of this decision.

3.    The claimant has severe impairments of status-post residuals of pain from lumbar surgery and headaches from a closed head injury.

4.    The claimant does not have an impairment, or combination of impairments, that meets or equals the severity of an impairment in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4.

5.    The claimant's complaints of totally disabling physical and mental limitations are not fully credible for the reasons set forth in detail in the body of this decision.

6.    The claimant is able to perform the full range of work at the light exertional level as defined by the regulations.  He is limited to occasional postural activities as that term is also defined by the regulations.

7.    The claimant is unable to perform his past relevant work as a recycling attendant, handyman, and water truck driver.

8.    The claimant's past relevant work as a recycling attendant and water truck driver, and handyman were semi-skilled and skilled but he does not have skills transferable to skilled or semi-skilled jobs within his residual functional capacity.

9.    The claimant was born on June 14, 1962, and was 38 years old or a "younger individual" as defined by the regulations as of his alleged disability onset date.  He has a ninth grade or 'limited' education as also defined by the regulations.

10.   Given the claimant's vocational profile and residual functional capacity referred to above, the vocational expert testified that the claimant could perform jobs as an assembler of small products, fast food worker and bottle line attendant.  Those jobs exist in significant numbers in the national economy pursuant to the regulations.

11.   The claimant has not been under a 'disability' as defined by the Act from November 1, 2000, his alleged disability onset date, through the date of this decision.

(Tr. at 16-17.)

\\\\\

3

1   ISSUES PRESENTED

2         Plaintiff has raised the following issues: A. Whether the ALJ Failed to Credit the

3   Opinions of Plaintiff's Consulting Physicians Without a Legitimate Basis; B. Whether the ALJ

4   Failed to Properly Credit Plaintiff's Testimony; and C. Whether the ALJ Failed to Pose a Legally

5   Adequate Hypothetical to the Vocational Expert.

6   LEGAL STANDARDS

7         The court reviews the Commissioner's decision to determine whether (1) it is

8   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

9   the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

10   Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v.

11   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence

12   as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d

13   625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ

14   is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

15   ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

16   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

17   rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

18   ANALYSIS

19     A. Whether the ALJ Failed to Credit the Opinions of Plaintiff's Consulting Physicians

20   Without a Legitimate Basis

21         Plaintiff contends that the medical opinions of consulting sources Drs. Regazzi

22   and Martin were improperly rejected by the ALJ.

23         The weight given to medical opinions depends in part on whether they are

24   proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246

25   \\\\\

26   \\\\\

F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[3]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is

---

[3]  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[4]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

2           The opinion of an examining physician is, in turn, entitled to
            greater weight than the opinion of a nonexamining physician.
3           Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v.
            Heckler, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the
4           opinion of a treating physician, the Commissioner must provide
            "clear and convincing" reasons for rejecting the uncontradicted
5           opinion of an examining physician. .... And like the opinion of a
            treating doctor, the opinion of an examining doctor, even if
6           contradicted by another doctor, can only be rejected for specific
            and legitimate reasons that are supported by substantial evidence in
7           the record.

8   Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996).

9           In regard to Dr. Regazzi, a consultant who conducted a psychological assessment

10  at plaintiff's counsel's request, the ALJ explained:

11          The examiner found no impairment of activities of daily living,
            social functioning, concentration or persistence.  He was
12          considered moderately impaired in pace and adaptation due to low
            average to borderline intelligence testing scores.  In addition to the
13          written report, the examiner completed a residual functional
            capacity questionnaire that imposed limitations far greater than
14          those enumerated in the written report.  Exhibit 11F.  The
            undersigned gives little weight to this assessment because it is
15          consistent [sic] with the weight of the evidence of record.  The
            limitations imposed in the questionnaire are not supported by the
16          findings of mental status testing and intelligence testing.  It is
            emphasized that the claimant underwent the examination that
17          formed the basis of the opinion in question not in an attempt to
            seek treatment for symptoms, but rather, through attorney referral
18          and in connection with an effort to generate evidence for the
            current appeal.  Further, the doctor was presumably paid for the
19          report.  Although such evidence is certainly legitimate and
            deserves due consideration, the context in which it was produced
20          cannot be entirely ignored, particularly given the internal
            inconsistencies in the report.
21  (Tr. at 15.)

22          Dr. Regazzi's written report found on December 15, 2006, that plaintiff's full

23  scale I.Q. was 85, and found him to be low average and borderline in verbal and academic skills,

24  \\\\\

25  \\\\\

26  \\\\\

1   which met the criteria for a formal learning disorder.  (Tr. at 219-20.)  Plaintiff's GAF was 55,[5]

2   based on his learning disorder, chronic back pain, finances, and children in foster care.  (Id. at

3   220.)  This psychologist found no impairment in daily activities and no significant impairment in

4   social functioning; sustained concentration and persistence was adequate; pace was moderately

5   impaired.  Dr. Regazzi concluded that plaintiff would learn at a slower pace, and would need

6   more instruction when learning new tasks.  Plaintiff had a moderate impairment in meeting basic

7   demands of most work which would include steady attendance, adequate learning pace and

8   reliable work productivity.  (Id. at 220.)

9          Dr. Regazzi's RFC form, in contrast, found plaintiff to have a moderate

10   impairment in ability to relate to other people, moderate restriction in daily activities, moderate

11   deterioration in personal habits, moderate constriction of interests, moderately severe limitation

12   in comprehending and following instructions and performing work requiring frequent contact

13   with others, moderate limitation where contact with others is minimal, moderately severe

14   limitation in performing simple tasks in a full time work setting, and severe limitation in

15   performing complex tasks in a full time work setting.  (Tr. at 221-24.)

16          These two reports are clearly inconsistent in their assessment of plaintiff's ability

17   to do daily activities, social functioning, and sustained concentration and persistence.  As

18   defendant points out, the ALJ was free to reject this psychologist's opinion on this basis.  See

19   Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999).  Furthermore, the ALJ was not

20   required to contact Dr. Regazzi for clarification because the reports were not ambiguous in any

21   way.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

22   \\\\\

23

24          [5] GAF is a scale reflecting the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25   Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 51-60 indicates
     moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or
26   moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

7

1          Furthermore, the ALJ could have properly relied upon only selected portions of a

2    medical opinion while rejecting other parts.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753

3    (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes

4    substantial evidence).  However, such selective reliance must be consistent with the medical

5    record as a whole.  See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ

6    cannot reject portion of medical report that is clearly reliable).  Here, the written report by Dr.

7    Regazzi is more consistent with the report of psychiatrist Dr. Wong, upon whom the ALJ relied.

8    Dr. Wong examined plaintiff independently on October 29, 2006, and concluded that he was

9    mildly to moderately impaired in completing complex tasks based on impaired concentration and

10   endurance.  This psychiatrist opined that plaintiff could complete an eight hour work day with no

11   psychiatric limitation.  He could perform with only a mild amount of difficulty, attend work

12   regularly, accept feedback and instruction, and interact appropriately with others.  Plaintiff's

13   current stress was due to changes in his health and was only mildly to moderately impaired.  Dr.

14   Wong diagnosed adjustment disorder and a GAF of 70[6] due to chronic pain.  Despite the fact that

15   plaintiff's life and children had been taken away from him,[7] this psychiatrist thought that plaintiff

16   had a fairly positive outlook.  (Tr. at 211.)

17          Although the ALJ did reject Dr. Regazzi's opinion in part due to the

18   circumstances surrounding this psychologist's retention by plaintiff's counsel, the primary reason

19   that she was rejected was due to her inconsistent reports.  (Tr. at 15.)  It was within the ALJ's

20   province to choose one consulting examiner over another on this basis.  Plaintiff's argument that

21   Dr. Wong's interview was short and Dr. Regazzi's examination was extensive and therefore

22   _____

23          [6] A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild
     insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional
24   truancy, or theft within the household), but generally functioning pretty well, has some
     meaningful interpersonal relationships."  DSM IV at 32.

25

26          [7] Plaintiff reported to Dr. Wong that his four children were taken away from him and his
     wife because they were homeless due to financial problems after plaintiff's injury.  (Tr. at 209.)

more deserving of greater weight is not persuasive.  Dr. Wong conducted a complete mental

status examination and had the benefit of collateral information which he reviewed.  (Id. at 209-

11.)  Dr. Wong's evaluation of plaintiff's mental health functioning is supported by substantial

evidence, especially in light of the lack of any mental health treatment records.

            In regard to the ALJ's rejection of Dr. Martin, plaintiff contends that the ALJ

improperly relied on the opinion of a non-examining Social Security Medical Reviewer over Dr.

Martin's well-founded opinion after examination.  In fact, the ALJ relied, not on the SSA non-

examining reports, which she did not even mention in her decision, but on Dr. McIntire's

consultative report which was based on a complete examination.  This neurologist conducted an

orthopedic examination on June 21, 2005 in regard to plaintiff's low back pain.  He noted that

although plaintiff walked in a stiff manner, there was no instability of gait, and he could walk on

heels and toes with no foot drop.  (Id. at 176.)  In the lumbar area, flexion was 80/90 degrees,

extension was 20/25, and lateral flexion was 25/25 degrees on both sides.  (Id.)  Examination of

the back revealed no paraspinal muscle spasm, no tenderness on palpation, negative straight leg

raising and Lasegue in both seated and supine positions, negative Patrick's sign, and no guarding

when seated.  Motor strength, muscle bulk and tone were normal.  The diagnosis was history of

congenital anomaly of the lumbar spine, and "question mild osteoarthritis."[8]  (Id. at 177.)  Dr.

McIntire stated that there were no findings of lumbar radiculopathy or myelopathy.  Based on

plaintiff's mild loss of range of motion and somewhat stiff posture, Dr. McIntire would limit

plaintiff to lifting and carrying 20 pounds frequently and 40 pounds occasionally.  He would not

impose any other limitations.  (Id. at 178.)

            The ALJ summarized this report and properly chose to rely on it over the report of

Dr. Martin which was basically a form that he completed.  (Id. at 14.)  Dr. Martin conducted a

clinical evaluation and medical records review on September 20, 2006.  He did not outline his

_____

[8]  Dr. McIntire did not have medical records to review and noted that it would have been
worthwhile to review them.  (Id. at 175.)

9

findings but rather completed a Medical Assessment of Ability to do Work-related Activities. He found that plaintiff could walk/stand one to two hours without interruption and four hours total in a work day, sit for less than an hour at a time. (Id. at 203.)  He could lift less than five pounds frequently, and five to ten pounds occasionally.  Plaintiff was partially restricted from climbing stairs or ladders.  He was restricted from bending or stooping, and would require rest periods during the day.  He opined that plaintiff could not sit for six hours in a work day because his legs were not reliable.  (Id. at 204.)  He also noted that plaintiff could not work an eight hour day, five days per week.  He predicted further deterioration in time.  At this time, plaintiff was experiencing chronic slight to moderate pain, but was taking only Prilosec.[9]  (Id. at 204, 205.) Dr. Martin concluded that plaintiff could do less than the full range of sedentary work.  (Id. at 204-05.)  His opinion was based on lumbar sciatica, post lumbar laminectomy syndrome, and slight paresthesia bilaterally in the legs.  (Id. at 203.)

Dr. Martin's form did not contain any clinical findings, and as a form report it was much more cursory in nature than Dr. McIntire's report which included clinical findings.  See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports).  The ALJ proffered these reasons for rejecting Dr. Martin's opinion, which are specific and legitimate and supported by substantial evidence in the record.

The remainder of the record includes treating physician notes indicating that plaintiff underwent a laminectomy, facetectomy, foraminotomy, and posterior lumbar interbody fusion for spondylolisthesis on February 18, 2000. (Tr. at 129.)  On March 1 and April 5, 2000, plaintiff no longer had any pain in his legs, and had pain only in his back and hips.  Plaintiff reported that he felt greatly improved since his back surgery and was doing well.  He was using less medication than before surgery.  (Id. at 116, 114.)  On May 10, 2000, plaintiff walked well

_____

[9]  Prilosec is prescribed for acid reflux.  www.webmd.com.

1    on his heels and toes.  He was taking Vicodin and Soma at this time.  (Id. at 112.)  As of July,

2    2000, although plaintiff experienced cramping in his legs and the medication was not helping too

3    much, he was better overall than preoperatively.  (Tr. at 110.)   It is significant to note that

4    plaintiff received no further back treatment or physical therapy after this time period shortly

5    following the surgery, and there are no other treating records in the file.

6           The DDS conducted a Residual Functional Capacity Assessment on July 19, 2005,

7    and concluded that plaintiff could do light work with limitations of occasionally climbing

8    ladders, rope or scaffolds, and frequently climbing ramps or stairs, occasional stooping,

9    crouching and crawling.  (Id. at 181.)  This SSA physician opined that the severity of plaintiff's

10   symptoms were disproportionate to the expected severity of his condition and that he was only

11   partially credible.  His alleged symptoms were not fully supported by the medical evidence.  (Id.

12   at 184.)  He also noted that plaintiff's credibility was eroded by the lack of any current medical

13   care and an objectively normal physical exam.  (Id. at 189.)  This report was affirmed by another

14   SSA physician on December 12, 2005.  (Id. at 186-87.)

15          Based on the record submitted, the court finds that substantial evidence supports

16   the ALJ's rejection of the opinions of Drs. Regazzi and Martin.

17        B. Whether the ALJ Failed to Properly Credit Plaintiff's Testimony

18          Plaintiff next contends that the ALJ rejected his testimony without a legitimate

19   basis.

20          The ALJ determines whether a disability applicant is credible, and the court defers

21   to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

22   94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

23   credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

24   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

25   supported by "a specific, cogent reason for the disbelief").

26   \\\\\

1        In evaluating whether subjective complaints are credible, the ALJ should first

2 consider objective medical evidence and then consider other factors.  Vasquez v. Astrue, 547

3 F.3d 1101 (9th Cir. 2008);  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The

4 ALJ may not find subjective complaints incredible solely because objective medical evidence

5 does not quantify them.  Bunnell at 345-46.  If the record contains objective medical evidence of

6 an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged

7 symptoms, including aggravating factors, medication, treatment, and functional restrictions.  See

8 id. at 345-47.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior

9 inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to

10 follow a prescribed course of treatment; and (3) daily activities.[10]  Smolen v. Chater, 80 F.3d

11 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

12 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity,

13 and effect of symptoms, and inconsistencies between testimony and conduct, may also be

14 relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ

15 may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

16 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

17 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that her impairment "could

18 reasonably have caused some degree of the symptom."  Vasquez, 547 F.3d at 1104, *quoting*

19 Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007, Smolen, 80 F.3d at 1282.  Absent

20 affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

21 must be clear and convincing, and supported by reference to specific facts in the record.

22 Vasquez, 547 F.3d at 1104-05.

23

24      [10] Daily activities which consume a substantial part of an applicants day are relevant.
"This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

25 activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
any way detract from her credibility as to her overall disability.  One does not need to be utterly

26 incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
(quotation and citation omitted).

1    Here, the sum total of the ALJ's analysis of plaintiff's credibility was limited to

2  describing his testimony as follows:

3           The claimant testified that he is able to walk 15 minutes to a half
             hour.  He stated that he is able to operate a motor vehicle but only
4            for one half hour.  The claimant testified that he is able to wash
             dishes and shop for small items.  He stated that his fiancee, Wendy
5            Knight, does most of the household chores.  She also helps the
             claimant wash his legs and put his shoes and socks on.  The
6            claimant made an offer of proof that Ms. Knight would corroborate
             his testimony as to the aforementioned activities.

7

8  (Tr. at 15.)

9    The ALJ then made an enumerated finding that "claimant's complaints of totally

10  disabling physical and mental limitations are not fully credible for the reasons set forth in detail

11  in the body of this decision." (Id. at 16.)  The previously cited paragraph is the only explanatory

12  detail provided by the ALJ who completely failed to analyze plaintiff's credibility and state why

13  she was rejecting it.

14    Plaintiff urges the remedy for this failure as set forth by the Ninth Circuit in Lester

15  v. Chater, 81 F.3d 821, 834 (9th Cir. 1996), and Varney v. Secretary of Health and Human

16  Services, 859 F.2d 1396, 1401 (9th Cir. 1988), that plaintiff's testimony should be credited as a

17  matter of law.  More recently, in Vasquez v. Astrue, 547 F.3d 1101(9th Cir. 2008), the Ninth

18  Circuit noted that Varney was limited to situations 'where there are no outstanding issues that

19  must be resolved before a proper disability determination can be made, and where it is clear from

20  the administrative record that the ALJ would be required to award benefits if the claimant's

21  excess pain testimony were credited.'  Id. at 1106, quoting Varney, 859 F.2d at 1401.  The court

22  then noted the split within this circuit over whether the credit-as-true rule was mandatory or

23  discretionary, comparing Lester with Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The

24  court concluded that it did not need to resolve the split as the Varney exception applied – there

25  were outstanding issues that had to be resolved first before a disability determination could be

26  made.  Id. at 1106.

1    In this case, there are outstanding issues which would need to be resolved after a

2  proper credibility determination, such as the issue raised by plaintiff in his motion regarding the

3  hypothetical posed to the expert.  Therefore, the <u>Varney</u> exception applies.  Furthermore, even if

4  there were no outstanding issues to be resolved, the court is more persuaded by <u>Connett</u> which

5  gives the court some flexibility in applying the credit-as-true theory.  As the internal split in the

6  Ninth Circuit has yet to be decided, this court will follow <u>Connett</u> which permits further findings

7  in evaluating plaintiff's credibility on remand.  In this manner, the ALJ may reopen the hearing to

8  received additional evidence, if necessary, including evidence regarding credibility.  340 F.3d at

9  876, *citing* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466-67 (9th Cir. 1996).[11]

10  <u>CONCLUSION</u>

11    Accordingly, plaintiff's Motion for Summary Judgment is GRANTED in part

12  pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's Cross Motion for

13  Summary Judgment is DENIED, and this matter is remanded for further findings in accordance

14  with this order.  The Clerk is directed to enter Judgment for plaintiff.

15  DATED: 02/26/09

16    /s/ Gregory G. Hollows

17    _____
      GREGORY G. HOLLOWS
      U.S. MAGISTRATE JUDGE

18  GGH/076/Tuttle1487.ss.wpd

---

[11]  For this reason, plaintiff's claim that the ALJ failed to pose a proper hypothetical to the
vocational expert will not be decided at the present time.